## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**ELAINE M.,**

     **Plaintiff,**

**vs.**                                        **CIVIL ACTION NO. 3:23-CV-00328**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER**
**OF SOCIAL SECURITY,**

     **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered April 14, 2023 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in support of her claim and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 8, 9)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 8), **GRANT** the Defendant's request to affirm the decision of the Commissioner (ECF No. 9); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

1

**Procedural History**

The Plaintiff protectively filed her application for DIB on November 2, 2020 alleging her disability began on September 12, 2020 due to anxiety, degenerative disc disease, GERD, diverticulitis, sleep apnea, lumbar compression fractures, tachycardia, thoracic spine compression fracture, rheumatoid arthritis, osteoporosis, hiatal hernia, gastroparesis, emphysema, asthma, left main coronary artery plaque, incomplete bundle branch block, and being a borderline diabetic. (Tr. at 22, 219)[1] Her claim was initially denied on April 6, 2021 and upon reconsideration on August 26, 2021 (Tr. at 22, 84-99, 101-107). Thereafter, the Plaintiff filed a written request for hearing on October 12, 2021. (Tr. at 125-126)

An administrative hearing was held on July 15, 2022 before the Honorable Nathan Brown, Administrative Law Judge ("ALJ"). (Tr. at 44-83) On August 1, 2022, the ALJ entered an unfavorable decision. (Tr. at 24-40) On February 27, 2023, the Appeals Council denied the Plaintiff's Request for Review, thus the ALJ's decision became the final decision of the Acting Commissioner. (Tr. at 1-7)

On April 13, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 1) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 5) Subsequently, the Plaintiff filed a Brief in support of her complaint (ECF No. 8); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 9), to which the

---

[1] The Plaintiff alleged she stopped working on September 12, 2020 because she retired. (Tr. at 219-220)

Plaintiff filed her Reply Brief (ECF No. 10). Consequently, this matter is fully briefed and ready for resolution.

## Plaintiff's Background

The Plaintiff was 62 years old as of the alleged onset date, and considered a person "closely approaching retirement age" during the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 84) She obtained her GED and last worked as a medical transcriptionist, medical clerk, outpatient scheduler, and certified nursing assistant. (Tr. at 76)

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the

performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such

factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through December 31, 2024. (Tr. at 24, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity since the alleged onset date of September 12, 2020. (Tr. at 25, Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: rheumatoid arthritis; degenerative disc disease; bilateral knee degenerative joint disease/osteoarthritis; coronary artery disease; obstructive sleep apnea; asthma; emphysema; obesity; and breast cancer. (Id., Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 27, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except

> she can operate foot controls bilaterally occasionally. She can climb ramps and stairs occasionally; but can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, and kneel. She can never crouch or crawl. She can occasionally work at unprotected heights, around moving mechanical parts, in weather, in atmospheric conditions, in extreme cold, in extreme heat, and in vibration. She can frequently work in humidity and wetness. She can also operate a motor vehicle occasionally.

6

(Tr. at 30, Finding No. 5)

At step four, the ALJ found the Plaintiff is capable of performing her past relevant work as a medical transcriptionist, medical clerk, and outpatient receptionist. (Tr. at 33-34, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability since September 12, 2020 through the date of the decision. (Tr. at 24, Finding No. 7)

### The Plaintiff's Challenges to the Commissioner's Decision

The Plaintiff argues that that ALJ's fourth step finding is contrary to law because no mental limitations were included in his RFC determination, or provide an explanation why they were omitted, thus frustrating meaningful judicial review. (ECF No. 8 at 2-8) The Plaintiff contends that the ALJ failed to account for the total limiting effects of her impairments by not properly evaluating her subjective complaints contrary to Section 1529 and the Fourth Circuit's holding in Arakas v. SSA, 983 F.3d 83 (4th Cir. 2020) – by discrediting her complaints based on the lack of objective evidence. (Id. at 8-11) Additionally, the ALJ failed to make any findings whatsoever regarding the Plaintiff's need for a cane when formulating the RFC. (Id. at 12-13)  the ALJ also failed to explain why those limitations were excluded from the RFC assessment. (Id. at 10-13) The Plaintiff further argues that the ALJ's RFC analysis was conflated with the Plaintiff's subjective symptoms contrary to Dowling v. Comm'r of SSA, 986 F.3d 377 (4th Cir. 2021); he impermissibly discounted her descriptions of her limitations, which included her daily activities, the location, duration, frequency, and intensity of pain and precipitating and aggravating factors, her medications, treatment, and other measures, as well as her work history. (Id. at 14-19) Instead, the ALJ relied on the objective evidence, and improperly increased her burden of proof requiring the

subjective descriptions of her symptoms to be supported by the objective evidence. (Id. at 19-20) Because of these errors, the Plaintiff asks the Court to remand this matter for further administrative proceedings. (Id. at 20)

In response, the Commissioner contends that the ALJ reasonably explained why the Plaintiff's nonsevere mental impairments did not result in work-related functional limitations, noting the ALJ's analysis set forth in the RFC assessment. (ECF No. 9 at 10-13) The Commissioner also contends that the ALJ's analysis of the Plaintiff's subjective complaints concerning her physical impairments and noted their support from the objective evidence, which distinguishes this case from Arakas. (Id. at 14-16) Contrary to the Plaintiff's argument, the ALJ did consider her symptoms under Section 1529 factors; the Commissioner argues that the Plaintiff is also factually incorrect to the extent she argues the ALJ did not evaluate or make findings concerning her cane use. (Id. at 16-18) The vocational expert even testified that the Plaintiff's cane use had no effect on her ability to perform sedentary work, and the ALJ's lack of acknowledgment that she had a prescription for a cane has no bearing on this finding, and if it did, it is at most a harmless error. (Id. at 18) The Commissioner disputes the Plaintiff's argument that the ALJ's decision is contrary to Dowling, as he did not treat the RFC and symptom evaluation as one and the same. (Id. at 18-19) The Commissioner further disagrees that the ALJ's failure to note the Plaintiff's work history as a relevant factor in evaluating her subjective complaints is error, and the Plaintiff fails to show how her work history would have affected the outcome of the decision. (Id. at 19-20) The Commissioner asks this Court to affirm the final decision because it is supported by the substantial evidence. (Id. at 20)

In her reply, the Plaintiff reiterates her arguments that the ALJ did not perform the proper

evaluation of her mental impairments, particularly whether even mild limitations in mental functioning would still allow her to return to her past relevant skilled work. (ECF No. 10 at 1-2) Because the ALJ never explained how the Plaintiff's mild limitations did not prevent her from performing past work, meaningful review has been denied to this Court. (Id. at 2-4) Additionally, the Plaintiff was entitled to rely entirely on her subjective symptoms in support of her self-described limitations, but the ALJ here relied on the absence of objective evidence which is contrary to Arakas and its progeny. (Id. at 4-7) The ALJ failed to make any findings regarding the Plaintiff's cane use, and the vocational expert did not address whether her need to use a cane when standing would impact her ability to perform past work. (Id. at 7-8) Finally, the ALJ conflated the Plaintiff's RFC evaluation with her symptoms analysis, which is contrary to the holding in Dowling. (Id. at 8-9) For these reasons, the Plaintiff asks this Court to remand this matter for further proceedings. (Id. at 9)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

**The Medical Record:**

From May to September of 2021, the Plaintiff visited Orthopedic Healthcare Associates (Tr. at 449-461). During these visits, she ambulated independently with no assistive device and showed normal range of motion, strength, and sensation (Tr. at 450, 453, 457, 460). While the

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

Plaintiff received some injections for pain in her knees, her doctor noted she had not completed her recommended physical therapy (Tr. at 452).

The Plaintiff briefly treated with First Settlement Physical Therapy in October 2021; however, she discharged herself after only a few weeks (Tr. at 31-32, 518). She subsequently continued to visit Orthopedic Healthcare Associates, where she consistently ambulated independently with no device needed, showed good range of motion, no pitting edema, and no effusion (Tr. at 32, 524, 527, 530).

The Plaintiff received treatment for her rheumatoid arthritis in her hands at Marshall Internal Medicine Rheumatology. During visits in October 2021 and June 2022, it was noted that she was taking medication for her arthritis, but her hands showed only degenerative changes and only mild tenderness on examination (Tr. at 32, 465, 579).

The Plaintiff treated with South Charleston Cardiology Associates for her cardiac impairments from 2019 to 2021 (Tr. at 338-349, 469-475). During this time, she was noted to be doing well on anti-anginal treatment and medical management (Tr. at 32, 345). In November 2021, the Plaintiff underwent a stress test that showed a post-stress ejection fraction of 79 percent, but also showed no ECG changes and a nondiagnostic electrocardiogram (Tr. at 32, 472).

Regarding her lung impairments, the Plaintiff treated with Pulmonary Associates of Charleston from 2018 to 2021 (Tr. at 565-577). The record documents a history of mild obstruction, sleep apnea, and emphysema; however, her general health was noted as stable (Tr. at 32, 429, 572). In March 2021, the Plaintiff also admitted to poor compliance with using her CPAP machine, noting that, because of a broken hose, she "hasn't been able to use it at all recently" (Tr. at 32, 411, 429).

10

The record indicates that the Plaintiff never received specialized treatment for her mental health, such as therapy or counseling, besides medication management: she was prescribed duloxetine at a 60 mg dosage through the entire relevant period (Tr. at 352, 385, 406, 449, 469). There are no mental health treatment notes in the record.

Consultative Examination:

In March 2021, the Plaintiff underwent a mental status examination by consultative medical examiner Mareda L. Reynolds, M.A. (Tr. at 351-354). Ms. Reynolds noted that the Plaintiff used antidepressant medication to treat her anxiety and depression, and reported that her medication was effective (Tr. at 352). She reported that she had never been in therapy (Id.). On examination, the Plaintiff displayed cooperative and appropriate behavior and was fully oriented (Tr. at 353). Her mood was euthymic (normal or without disturbance), and she denied hallucinations, delusions, obsessions, or compulsions (Id.). Relating to her insight and judgment, the Plaintiff showed an understanding of her mental health and was able to identify treatment options (Id.). In recall and memory, she was able to recall four of four unrelated items immediately and two items after five minutes, could follow directions during the interview, and could explain recent and past events in her personal history (Id.). Regarding her concentration and attention, she was able to repeat six digits forward and five digits in reverse, and was able to pay attention throughout the interview (Id.). Finally, in persistence and pace, the Plaintiff was "able to remain on task/topic for as long as needed" (Id.). Ms. Reynolds also noted that the Plaintiff was "ambulatory with effective use of all extremities. No tics, tremors, or stereotypical movements were observed" (Id.). Ms. Reynolds diagnosed the Plaintiff with unspecified depressive disorder and unspecified anxiety disorder (Tr. at 353-354).

Also in March 2021, Karen Jewell, APRN, conducted a physical consultative examination of the Plaintiff (Tr. at 373-378). Ms. Jewell wrote that the Plaintiff's gait was steady, she "ambulated without the use of an assistive device," and "transferred from the chair to the exam table without difficulty" (Tr. at 375). The Plaintiff was also able to flex at the hips to remove and replace her socks and shoes (Id.). On examination, while the Plaintiff's range of motion was found to be decreased in her right knee, she otherwise showed normal results in all areas (Tr. at 374-376). She had no tenderness in the hands, wrists, elbows, feet, and ankles; 5/5 muscle strength; normal sensation; and could heel walk and toe walk without difficulty (Id.). The Plaintiff also reported that her pain improved with medication (Tr. at 373).

Prior Administrative Medical Findings:

In March 2021, Timothy Saar, Ph.D., a state agency psychologist, reviewed the Plaintiff's medical records and found that she had mild limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace; and no limitations in adapting or managing herself (Tr. at 91). As additional explanation, Dr. Saar wrote that the Plaintiff "can learn and perform work like procedures and interact with the public" (Tr. at 92). On reconsideration, Jeff Boggess, Ph.D., found Dr. Saar's initial assessment consistent with the record evidence, and affirmed his assessment as written (Tr. at 105).

Regarding the Plaintiff's physical impairments, Narendra Parikshak, M.D., evaluated the Plaintiff's RFC on initial review (Tr. at 96). She opined that the Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently; could stand or walk for a total of four hours; could sit for six hours in an eight-hour workday; could occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; and should avoid concentrated

exposure to environmental hazards (Tr. at 94-96). On reconsideration, Rabah Boukhemis, M.D., made no changes to the initial RFC (Tr. at 104).

**Plaintiff's Function Reports:**

As part of her disability application, the Plaintiff completed two Adult Function Reports describing her subjective symptoms (Tr. at 232-239, 298-305).  In the first report from December 2020, the Plaintiff wrote that her physical impairments caused her difficulty in standing and walking; she also reported that she had no problems with personal care, prepared her own meals, did small loads of laundry, washed dishes, and made her own bed (Tr. at 232-234). Regarding hobbies, she wrote that she enjoyed reading books and watching TV, and had daily contact with others in person or via texting, phone calls, or video calls (Tr. at 236). The Plaintiff reported multiple postural limitations; regarding her mental impairments, she reported problems with completing tasks, and wrote that she could pay attention, follow instructions, get along with authority figures, and handle stress well (Tr. at 237-238). The Plaintiff did not report needing to use a cane (Tr. at 238).

In the second report from August 2021, the Plaintiff reported essentially the same activities and symptoms, although she wrote that she had no problems with completing tasks, but did have issues with concentration (Tr. at 298-303). The Plaintiff also reported using a cane (Tr. at 304).

**The Administrative Hearing:**

<u>The Plaintiff's Testimony:</u>

The Plaintiff testified having severe back pain daily that significantly affects her ability to have any normal activity, such as grocery shopping – she has had to leave her cart and go back to the car and have a family member finish shopping. (Tr. at 50-51) Sometimes her back pain travels

down into her hips and legs; she tried physical therapy but it did not help. (Tr. at 51-52) She had injections into her knee, which helped for a while, but then it started hurting again. (Tr. at 52) She takes oxycodone and ibuprofen for her pain, that seems to help, although her medications make her nauseated and sleepy. (Tr. at 52-53) She also uses a cane: had been using one for a year or more before her doctor prescribed one for her; she uses her dominant hand for her cane; and she stated the cane helps with going up and down steps and balancing when walking. (Tr. at 53-54) She endorsed not being able to walk more than twenty feet without her back hurting and getting out of breath. (Tr. at 54) She stated she also cannot sit or stand for a long time before she needs to change positions because of her back pain. (Tr. at 55) Postural movements, such as bending, crouching or stooping are painful for her as well. (Tr. at 55-56)

The Plaintiff testified that she is supposed to have total knee replacement surgery because "there is no cushioning left in behind" her kneecaps, but is waiting on Medicare; she experiences daily pain in her knees as well as swelling for which she needs to elevate her legs for about fifteen to twenty minutes. (Tr. at 56-58, 59)

The Plaintiff also has rheumatoid arthritis in her hands, fingers and wrists that is spreading to her shoulders; it affects her right, dominant hand more than her left. (Tr. at 59-60) She said she is unable to grip or open things, like jars, and can no longer wears shoes with laces. (Tr. at 60-61)

Regarding her emphysema, the Plaintiff stated that she uses inhalers; she said candles, air fresheners, pollen, trees, and when her husband mows grass cause her breathing problems. (Tr. at 62) She stated that cold weather and humidity makes it hard for her to breathe, too. (Id.)

She has nitroglycerin if she needs it for her cardiac issues; she has not had a heart attack, but she is being monitored by a cardiologist. (Tr. at 63) She uses a CPAP machine at night that

helps with more restful sleep, but she may have the pressure on it lowered because it makes her chest hurt. (Tr. at 64)

The Plaintiff testified that she "can't remember anything" but chalked it up to "getting old"; she stated that she had to retire from working because she was unable to continue doing her job, which makes her feel very depressed. (Tr. at 65) She has anxiety issues as well, and really does not go anywhere. (Tr. at 65-66)

> The Vocational Expert's (VE) Testimony:

The VE categorized the Plaintiff's past work as sedentary, semi-skilled work (Tr. at 76). The ALJ then posed a hypothetical scenario to the VE including the following limitations:

> [T]he individual can perform sedentary work as defined by the regulations, except that the individual could operate foot controls bilaterally only occasionally. The individual could climb ramps and stairs occasionally, never climb ladders, ropes or scaffolds. The individual could only occasionally balance, stoop, and kneel. The individual can never crouch and never crawl.

(Tr. at 77). The VE responded that the hypothetical individual would be capable of performing the Plaintiff's past work (Tr. at 78). The ALJ then asked the VE whether an addition to the hypothetical requiring the individual "to use a cane to ambulate on all surfaces" would affect the ability to do the Plaintiff's past work, and the VE replied that it would not, since the past jobs are sedentary in nature (Id.).

Following the ALJ's questioning, the Plaintiff's attorney asked the VE whether an unlimited sit-stand option would affect the Plaintiff's ability to do her past work (Tr. at 80). The VE replied that a sit-stand option would have no impact as long as the Plaintiff remained on-task 85 percent of the time (Id.).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**<u>Analysis</u>**

<u>The Absence of Mental Limitations in the RFC Assessment:</u>

The RFC determination is the "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work setting despite her functional limitations. See 20 C.F.R. § 404.1545(a)(1). The RFC is an administrative finding within the ALJ's exclusive jurisdiction. See <u>Id</u>. § 404.1546(c); see also <u>Id</u>.

§ 404.1520c(a) (instructing that ALJs will not defer to medical opinions or prior administrative medical findings). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. Id. § 405.1545(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5.

There is no dispute between the parties as to the ALJ's finding that the Plaintiff had mild limitations in concentrating, persisting or maintaining pace[3] and mild limitations in adapting or managing oneself.[4] (Tr. at 26) Despite the Plaintiff's contention that the ALJ failed to incorporate these limitations into the RFC assessment, this District has recognized that mental limitations identified using the psychiatric review technique do not necessarily indicate work-related functional limitations that must be present in the RFC assessment. See *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021)(Tinsley, M.J.), *report and*

---

[3] This area of mental functioning refers to:

> the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00E(3). A "mild limitation" means a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited." Id. § 12.00F(2)(b).

[4] This area of functioning refers to:

> the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00E(4).

*recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021)(Copenhaver, J.);

*Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D.W. Va. May 21, 2021)(Tinsley,

M.J.)(citing <u>Mascio v. Colvin</u>, 780 F.3d 632, 638 (4th Cir. 2015)(a claimant's "moderate limitation

in concentration, persistence, or pace at step three" may not "affect [her] ability to work" and thus

"does not translate into a limitation in [her RFC]")), *report and recommendation adopted*, 2021

WL 5230987 (S.D.W. Va. Nov. 9, 2021)(Copenhaver, J.).

Nevertheless, it is apparent that the ALJ not only considered the Plaintiff's limitations in

these areas, even noting at the third step of the sequential evaluation process that her inflammatory

arthritis impairment did not result in any marked limitations in activities of daily living, in

maintaining social functioning, or in completing tasks in a timely manner due to deficiencies in

concentration, persistence, or pace. (Tr. at 29) When assessing her RFC, the ALJ noted that

because of her impairments, the Plaintiff testified that she stays home most of the time. (Tr. at 30)

Additionally, in her discussion of the evidence in support of the RFC determination, the ALJ noted

that neither state agency psychological consultant found that the Plaintiff had a severe mental

health impairment. (Tr. at 33, 84-99, 101-107). The ALJ also noted that during the evaluation with

Ms. Reynolds, despite her complaints of low mood, social withdrawal, anhedonia, and occasional

crying spells, the Plaintiff's mental health status was overall normal; and that the Plaintiff reported

that her medical treatment was effective and that she had never been in therapy. (Tr. at 33, 353,

352)

To the extent the Plaintiff asserts that the ALJ's only reference to Section 404.1545 and

SSR 96-8p "is in the boilerplate introductory section on page 3 of his decision" and "[f]or this

reason alone, remand is required" pursuant to <u>Dowling</u>, 986 F.3d at 387 (ECF No. 8 at 14), the

18

foregoing demonstrates this assertion lacks merit. The Fourth Circuit did not hold that remand was required for such a reason "alone" – in that case, the ALJ did not cite to these regulatory frameworks *at all*, but instead relied upon the incorrect regulatory framework: SSRs 96-7p and 16-3p, which pertain to the evaluation of a claimant's subjective complaints. Id. And further, unlike in <u>Dowling</u>, the ALJ here considered the Plaintiff's subjective complaints under the two-step test for symptom evaluation, and then went beyond his findings relating to the Plaintiff's subjective complaints when assessing her RFC by considering her response to treatment and medication, as well as the findings of the state agency medical consultants, discussed further, *infra*.[5] (Tr. at 30-33) Thus, the ALJ did not treat the RFC and symptom evaluation as "one and the same," contrary to <u>Dowling</u>. In the case at bar, even though the ALJ cited to the proper framework early on in the written decision, he obviously carried through to the subsequent steps in the sequential evaluation process.

In sum, the ALJ complied with his obligation under Section 404.1545(a) and SSR 96-8p, as he not only discussed all the relevant evidence as it related to her mild limitations, but he also adequately explained why those restrictions were not included in the RFC assessment. Thus, this

---

[5] This Court previously found that substantial evidence supported an RFC assessment that did not include any mild limitations where the ALJ addressed the minimal findings of both providers and the opinion evidence, noting they did not necessitate any further work-related restrictions. See, *Hunt v. Kijakazi*, No. 1:21-cv-00265, 2021 WL 9076248, at *10 (S.D.W. Va. Dec. 9, 2021), *report and recommendation adopted*, 2022 WL 2719968 (S.D.W. Va. July 13, 2022). This Court applied the same rationale in *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D.W. Va. May 21, 2021), *report and recommendation adopted*, 2021 WL 5230987 (S.D.W. Va. Nov. 9, 2021). In *Hedrick*, the claimant, like the Plaintiff here, did not receive any specialized mental health treatment during the period under review. In both *Hunt* and *Hedrick*, the ALJ continued the review of the claimants' mental impairments beyond the second step of the sequential evaluation process, just as did the ALJ in this case.

Court need not have to "guess about how the ALJ arrived" at this conclusion, allowing for meaningful judicial review. See <u>Mascio v. Colvin</u>, 780 F.3d 632, 637 (4th Cir. 2015).

<u>Evaluation of Symptoms in Disability Claims:</u>

As noted *supra*, the Plaintiff also asserts that the ALJ's analysis of her subjective complaints is unsupported by substantial evidence because it did not comply with the factors enumerated under SSR 16-3p, as he emphasizes the objective medical evidence to discredit her subjective symptoms. (ECF No. 8 at 8-12)

SSR 16-3p clarifies the evaluation of symptoms, including pain: 20 C.F.R. § 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

The Ruling further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. <u>See</u>, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports

from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 404.1529(c)(3).

As an initial matter, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings

21

to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

Recently, the Fourth Circuit held that "an ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." See Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020) (internal citations omitted). The Fourth Circuit "reiterate[d] the long-standing law in our circuit that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms." Id. It is important to recognize that in Arakas, the Court concluded that substantial evidence did not support the ALJ's finding that the claimant's subjective complaints were inconsistent with her daily activities because the overall record actually supported her subjective complaints and demonstrated she would be unable to engage in substantial gainful activity. Id. Another significant, if not critical, aspect of the Arakas holding is that the Court found the ALJ's analysis included misrepresentations or overinflation of the claimant's abilities, to the exclusion of that evidence which did not support such a conclusion. Id. For purposes herein, this Court must determine if the subject ALJ's analysis relied primarily on the lack of objective medical evidence as the reason for discounting the Plaintiff's complaints.

In the written decision, the ALJ noted:

The claimant alleged an inability to work due to conditions, such as degenerative disc disease, rheumatoid arthritis, asthma, and sleep apnea (Exhibit 2E, p. 2). At the hearing, she stated that she has low back pain that is aggravated with activities,

such as walking for extended periods. As to treatment, she testified that she takes Oxycodone for her pain. She also stated that she takes Ibuprofen. As to other impairments, the claimant testified that she has pain in areas such as her hands, fingers, wrists, shoulders, hips, and knees. She stated that she got gel injections in the knees that gave her relief for a while. However, she stated that they recently started hurting again. She also stated that she uses a cane with her right hand and has to elevate her legs up to a few times a week to alleviate swelling. As to physical abilities, the claimant testified that she has difficulty gripping things like jars. She also stated that she gets short of breath at times when she is in cold or humid environments and when she is around candles and air fresheners. She stated that she uses inhalers and a nebulizer for emphysema. Finally, the claimant testified that she uses a CPAP for sleep apnea. As to activities of daily living, the claimant testified that she goes to her daughter's house or to Walmart to pick up an order. However, she stated that she stays home most of the time.

(Tr. at 30, 219)[6] After properly performing the two-step process, the ALJ proceeded to review the evidence of record and reconciled it with the Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms, and found that they "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. at 31)

The ALJ then reviewed the medical records, discussed *supra*, and made several significant observations, for instance: despite imaging from CAMC showing evidence of a compression fracture at L2 producing a mild loss of height unrelated to any injury, the Plaintiff reported her pain was better using Oxycodone and Ibuprofen (Tr. at 31, 357, 373)[7]; despite a history of joint pain in both hands, right wrist and elbow, both shoulders, left hip and both knees, and that holding things made her pain worse, taking Ibuprofen and other pain medications alleviated her pain (Id.);

---

[6] The ALJ referred to the Plaintiff's Disability Report dated November 3, 2020.

[7] See 20 C.F.R. § 404.1529(c)(iv)-(v) (evaluation of symptoms includes consideration of effectiveness of medication and treatment); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.")

despite reporting shortness of breath issues her whole life, she denied ever having been in the ER

or hospitalized for breathing issues or using supplemental oxygen, and used short acting inhalers

daily and steroids a few times a year (Tr. at 31, 33, 373, 374); and physical examinations revealed

she could ambulate independently without an assistive device and appeared comfortable in sitting

position (Tr. at 31, 32, 378, 527).

> In Hines v. Barnhart, the Fourth Circuit stated that:

> Although a claimant's allegations about her pain may not be discredited solely
> because they are not substantiated by objective evidence of the pain itself or its
> severity, they need not be accepted to the extent they are inconsistent with the
> available evidence, including objective evidence of the underlying impairment, and
> the extent to which that impairment can reasonably be expected to cause the pain
> the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1995)). Following his review

of the medical and other evidence of record, while the ALJ recognized the Plaintiff alleged she is

unable to work due to numerous conditions that included arthritic pain, asthma, and degenerative

disc disease, her treatment had been conservative overall.  (Tr. at 33)

> Regarding the Plaintiff's contention that the ALJ "*never* even acknowledged that she was

prescribed a cane" or "properly consider her need for a cane when formulating the RFC" (See ECF

No. 8 at 13)(emphasis in original), the undersigned notes that the following Ruling provides further

guidance when the issue of hand-held assistive devices arises:

> **Medically required hand-held assistive device:** To find that a hand-held assistive
> device is medically required, there must be medical documentation establishing the
> need for a hand-held assistive device to aid in walking or standing, and describing
> the circumstances for which it is needed (i.e., whether all the time, periodically, or
> only in certain situations; distance and terrain; and any other relevant information).
> The adjudicator must always consider the particular facts of a case.

> See, *Titles II and XVI: Determining Capability to do Other Work--Implications of a*

24

*Residual Functional Capacity For Less Than a Full Range of Sedentary Work*, SSR 96-9p, 1996 WL 374185, at \*7. (**bold** in original) From the undersigned's review of the evidence of record, there is no medical documentation establishing the Plaintiff's cane was medically required pursuant to this Ruling (See, e.g., Tr. at 532). Further, the ALJ in this case *did* consider the Plaintiff's cane use, as noted *supra*. (Tr. at 30) More importantly, however, notwithstanding the fact that the ALJ noted numerous instances in the medical record during the relevant period established that the Plaintiff *did not need* an assistive device in order to ambulate, the VE specifically testified during the administrative hearing that even if the hypothetical individual with the Plaintiff's background "would need to use a cane to ambulate on all surfaces" it would not impact the ability to perform her past relevant work. (Tr. at 78) Therefore, the ALJ's failure to acknowledge that the Plaintiff's cane was *prescribed* is of no moment, and does not constitute reversible error. Regardless, it is clear that the ALJ also "consider[ed] the particular facts of [this] case" in accordance with the pertinent Ruling.

As an additional matter, the Plaintiff's contention that the ALJ erred by not considering her "impeccable work history" as a "credibility enhancing factor" (ECF No. 8 at 18) when analyzing her subjective symptoms is also without merit – the ALJ had to consider the Plaintiff's work history to determine that she met insured status requirements through December 31, 2024 (Tr. at 24, Finding No. 1).[8] Obviously, the ALJ could not have found the Plaintiff could still perform her past relevant work as a medical transcriptionist, medical clerk, and outpatient receptionist without

---

[8] In the "List of Exhibits" attached to the written decision, the ALJ considered the Plaintiff's work history, as provided by the certified earnings records that shows steady earnings from 1981 through 2020. ("Exhibit 3D", Tr. at 203-205; "Exhibit 4D", Tr. at 206; "Exhibit 5D", Tr. at 207-212)

considering her work history (Tr. at 33, Finding No. 6).

Given the conflicting evidence consisting of the Plaintiff's allegations of pain and other symptoms with the objective and other evidence of record, the ALJ is solely responsible for resolving the conflict; the issue before the Court is not whether the Plaintiff is disabled, but whether the ALJ's finding is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Craig, 76 F.3d at 589. The ALJ provided a reasonable narrative that included not only the Plaintiff's testimony, but also the objective medical evidence of record and other evidence of record. In short, the ALJ provided a fairly thorough and adequate review of the Plaintiff's subjective complaints, reconciled them with the medical and other evidence of record, and ultimately determined that her symptoms did not limit her to the extent alleged.[9] Indeed, while the ALJ did not specifically find that the Plaintiff's conservative treatment of her physical impairments were dispositive of his conclusions, the law does not require one to be pain-free or experience no discomfort in order to be found not disabled. Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1996). In this case, it is clear that the ALJ did not select only those portions from the objective medical evidence that failed to support the Plaintiff's allegations of disabling impairments – he also considered her testimony and other evidence, both supporting and non-supporting.

To the extent that the Plaintiff failed to comply with her medication or treatment regime

---

[9] Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." (quoting Craig, 76 F.3d at 589)).

due to alleged worsening symptoms (See, e.g., Tr. at 32, 518[10], 429[11]), which was also noted by the ALJ, it is significant that pursuant to the regulations, to receive benefits, a claimant must follow treatment prescribed by medical sources if the treatment is expected to restore the ability to work. See 20 C.F.R. § 404.1529(c)(3)(iv)-(vi) (noting that treatment, and thus, failure to pursue treatment, is a factor that the ALJ can use to evaluate the severity of a claimant's symptoms); Id. § 404.1530(a) (providing that if prescribed treatment can restore an individual's ability to do work-related functions, he or she must comply with it); SSR 16-3p, 2016 WL 1119029, *8 (Mar. 16, 2016) (noting that the Social Security Administration will consider whether an individual follows prescribed treatment when evaluating the individual's ability to perform work activities and providing that "if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record"); Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (holding that inconsistency between a claimant's allegations about the severity of an impairment and the actual treatment sought is probative evidence of non-disability). In this case, as noted *supra*, the ALJ properly considered the Plaintiff's improvement with treatment and medication – but interestingly, the record of evidence showed that the Plaintiff's symptoms did *not* worsen when she failed to continue treatment or medication in his analysis for the RFC.

In short, the resulting RFC assessment concerning both the Plaintiff's physical and mental impairments included the required discussion of all the relevant evidence that allows for

---

[10] The ALJ cited the medical record indicating the Plaintiff "self-discharge[d]" from physical therapy due to reported increased pain.

[11] The ALJ cited the medical record indicating the Plaintiff had poor compliance with CPAP usage, and also reported the hose broke and she had not used it in a while.

meaningful judicial review. It is also clear that the RFC assessment is not a product of cherry-picking facts that support a finding of non-disability. Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017). In this case, the ALJ complied with the mandate to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

Accordingly, the undersigned **FINDS** that the RFC assessment is supported by substantial evidence, and further **FINDS** that the ALJ did a proper evaluation of the Plaintiff's subjective complaints in compliance with the pertinent legal authority.

Finally, the undersigned **FINDS** the final decision of the Commissioner denying benefits is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request for remand (ECF No. 8), **GRANT** the Defendant's request to affirm the decision (ECF No. 9), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections,

identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: September 7, 2023.



Omar J. Aboulhosn
United States Magistrate Judge